**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

VICTORIA M. RAMIREZ,

        Plaintiff,

v.                                    CIV 17-0781 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

        THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand (*Doc. 16*) filed on March 11, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 7*, *13*, *14.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

## I.    Procedural History

        On November 1, 2013, Ms. Victoria Ramirez (Plaintiff) protectively filed an application with the Social Security Administration for Supplemental Security Income under Title XVI of the Social Security Act. Administrative Record[1] (AR) at 169-75. Plaintiff alleged a disability onset date of May 16, 1995, which she later amended to November 1, 2013. AR at 41, 169. Disability Determination Services (DDS) determined

---

[1] Document 10-1 contains the sealed Administrative Record. *See Doc. 10-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

that Plaintiff was not disabled both initially (AR at 69-77) and on reconsideration (AR at 78-89). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her SSI application. AR at 110-12.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 36-67. ALJ Michelle K. Lindsay issued an unfavorable decision on June 15, 2016. AR at 17-35. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 103-05), which the Council denied on June 19, 2017 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II. Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to

perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. § 416.945(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process, ALJ Lindsay found that Plaintiff "has not engaged in substantial gainful activity since November 1, 2013, the application date . . . ." AR at 22 (citing 20 C.F.R. § 416.971–976). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: osteoarthritis of the right knee and ankle; lumbar and cervical strain; headaches; metatarsalgia of the right foot; hypertension; obesity; and, major depression." AR at 22 (citing 20 C.F.R. § 416.920(c)). The ALJ found that while Plaintiff has "diagnoses of duodenal ulcer and status post treatment for Heliobacter pylori bacterial infection[,] . . . [t]here is no evidence to support a finding that these conditions, whether considered singly or in combination[,] significantly impair [Plaintiff's] ability to engage in work activity" and are not severe. AR at 22-23.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 23 (citing 20

C.F.R. §§ 416.920(d), 416.925, 416.926). At Step Four, the ALJ thoroughly considered

the evidence of record and found that Plaintiff

> has the residual functional capacity to perform less than the full range of light work as defined in 20 [C.F.R. §] 416.967(b). Specifically, the claimant can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently. She can stand and/or walk for six hours out of an eight-hour workday with normal breaks, and sit for six hours out of an eight-hour workday with normal breaks. She can occasionally climb stairs and ramps, balance, crouch, kneel, or crawl, and can frequently stoop. She must avoid more than occasional exposure to extreme cold, and must avoid unprotected heights and more than moderately loud work environments. She is able to understand, remember, and carry out simple instructions, and is able to maintain attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task. She can have only occasional contact with the general public, and superficial interactions with co-workers and supervisors. She requires work involving no more than occasional change in the routine work setting.

AR at 25.

ALJ Lindsay concluded that Plaintiff has no past relevant work (AR at 29 - citing

20 C.F.R. § 416.965), but she is able to perform work as a photocopy machine operator,

marker, and order caller. AR at 30. The ALJ ultimately determined that Plaintiff "has not

been under a disability, as defined in the Social Security Act, since November 1, 2013."

AR at 30 (citing 20 C.F.R. § 416.920(g)).

## III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the

factual findings are supported by substantial evidence in the record and whether the

correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal

citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v.

Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV.  Discussion

Plaintiff sets forth four issues in her motion. Plaintiff argues that the ALJ erred in: (1) failing "to properly weigh the opinions of consultative examiner, Dr. Murphy" (*Doc. 16* at 8); (2) finding her gastrointestinal issues non-severe and failing to incorporate limitations into Plaintiff's RFC from her non-severe impairments (*id.* at 10); (3) performing an improper analysis of the non-examining agency consultant, Dr. Chiang (*id.* at 11); and (4) failing to use the two-step analysis required by SSR 16-3p to evaluate Plaintiff's symptoms (*id.* at 13).

**A.**    **The Court finds no reversible error in the ALJ's analysis of either Dr. Murphy's or Dr. Chiang's opinions.**

**1.**    **Dr. Murphy's examination and opinion.**

Dr. Finian J. Murphy, Ed. D., conducted a mental status examination at the request of Disability Determination Services on April 29, 2014. *See* AR at 395. Dr. Murphy did not receive any of Plaintiff's health records to review. AR at 395. From his interview with Plaintiff, Dr. Murphy reported that she is a high school graduate with trade school certificates in Radio and TV, Police Science, and Graphic Arts. AR at 396. "[S]he last worked in 2010 part time as a census canvasser" but "asserts that she can never work full-time on a regular job due to her multiple medical problems." AR at 396. Plaintiff reported to him:

> She has no energy or motivation to do anything during the day. Because of her multiple medical problems, she believes that part of her has died. She has an extremely poor self image and believes that she is an abject failure. She has become very reclusive and avoids most other people. She states that she has great difficulty concentrating on anything and is easily distracted. . . . She claims that she has had multiple suicidal ideations and has attempted to kill herself [three] times in the past. Her last attempt at suicide was in 2008.

AR at 397. Plaintiff also reported that she has a good relationship with her parents and one sister. AR at 397.

While Plaintiff appeared depressed and anxious during the evaluation, she maintained good eye contact and was polite and responsive. AR at 397 (noting that Plaintiff's "responses to questions were appropriate and detailed"). Plaintiff's thought processes and movement were within normal limits, and she was oriented in all spheres. AR at 397. Plaintiff correctly answered basic questions such as the date, the city, the current and past presidents of the United States, the current governor, and the

state capitol. AR at 397. She could remember three words three minutes after she heard them, she could do serial 3's but not serial 7's, she could do basic math calculations and make change. AR at 397.

Dr. Murphy noted that Plaintiff's activities of daily living are normal, her intelligence and judgment are average, and "[h]er ability to understand instructions is within the normal range." AR at 395, 397-98. He found that she could handle her own benefit payment. AR at 398. He diagnosed Plaintiff with "Major Depression, Chronic, Severe secondary to physical medical problems." AR at 395. Dr. Murphy opined that Plaintiff's "ability to carry out instructions, to concentrate and to persist at tasks is markedly limited by her psychological and medical problems." AR at 395.

## 2. The ALJ adequately analyzed Dr. Murphy's opinion.

ALJ Lindsay summarized Dr. Murphy's examination notes and evaluation as follows:

> [Plaintiff] was timely, fully oriented, neatly dressed and groomed, and said she drove herself in her father's truck. She reports a history of three suicide attempts, with the last being in 2008. She believes that her mental health is secondary to her physical conditions. She has lost all interest; as [sic] a poor self-image and believes she is a failure, resulting in isolation and avoidance. Dr. Murphy noted her mood was depressed, affect anxious, and thought processes within normal limits. She was able to maintain good eye contact. She was able to provide detailed and appropriate responses. Movement was also normal. She performed well on the mini-mental status examination. Overall, Dr. Murphy noted her activities of daily living are normal and her intelligence is normal. He believes she is able to understand instructions, but her ability to execute those instructions and persistent [sic] is markedly limited by both her physical and mental conditions.

AR at 27 (citing AR at 394-99).

The ALJ gave "little weight" to the functional limitations (regarding marked limitations in Plaintiff's ability to carry out instructions, to concentrate, and to persist at tasks) that Dr. Murphy opined. AR at 29. ALJ Lindsay found that the marked limitations "are not consistent with the results of [Dr. Murphy's] examination, and appear to be based upon [Plaintiff's] reporting." AR at 29. Instead, the ALJ gave "more weight to the opinions of the state agency medical consultants," including Dr. Elizabeth Chiang, and found that "their opinions are more consistent with the psychological evaluation." AR at 29; *see also* AR at 83-87.

Plaintiff first complains that the ALJ's analysis is insufficient under 20 C.F.R. § 416.027(c)(2)–(6). *Doc. 16* at 9. Specifically, she asserts that the ALJ's analysis included only one of the required factors listed in 20 C.F.R. § 416.927(c)(2)–(6). *Id.* The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (quotations omitted); *see also* 20 C.F.R. § 416.927(c)(2)–(6). With respect to the first, second, and fifth factors, ALJ Lindsay noted that Plaintiff saw Finian Murphy, Ed. D., one time for a psychological evaluation at the request of the state agency. AR at 27.

With respect to the third factor, the ALJ found that Dr. Murphy's opined limitations were not consistent with the results of the examination. AR at 29. Plaintiff argues that

the ALJ did not explain *how* these limitations are inconsistent with the examination. *Doc. 19* at 3-4. It is true that the ALJ did not provide a detailed explanation for her rationale. In her discussion of the evaluation, however, in the same paragraph that she mentions Dr. Murphy's opined functional limitations, the ALJ also notes that Plaintiff's thought processes are within normal limits, she provided detailed and appropriate responses, "[s]he performed well on the mini-mental status examination[,]" and "her intelligence is normal." AR at 27. These notes are indicative of the ALJ's reasoning for finding that Dr. Murphy's opinion was inconsistent with the examination.

With respect to the sixth factor, the ALJ discounted Dr. Murphy's opinion because it "appear[s] to be based upon her reporting." AR at 29. Plaintiff contends that it was error for the ALJ to discount the opinion because it was partially based on self-reporting and asserts that the Tenth Circuit's decision in *Thomas v. Barnhart*, 147 F. App'x 755 (10th Cir. 2005) supports her position. *Doc. 16* at 9. Reasoning that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements[,]" the Tenth Circuit found that the ALJ had erred in "totally reject[ing]" the consultative psychiatrist's opinion "*solely* for the reason that it was based on [the claimant's] responses . . . ." *Thomas*, 147 F. App'x at 759, 760 (emphasis added, citations omitted). *Thomas* is distinguishable, however, because as described in this opinion, ALJ Lindsay gave other, valid reasons for assigning little weight to Dr. Murphy's functional limitation opinion. *See Fuhrer v. Colvyn* [sic], No. 13-CV-0415 CG, 2014 WL 12796878, at *8 (D.N.M. Mar. 27, 2014) (rejecting claimant's contention that the ALJ erred in discounting a consultative psychologist's opinion because it was based on self-reports, where the ALJ gave other reasons for discounting the opinion).

Moreover, the ALJ also thoroughly discussed why she found that Plaintiff's allegations of her symptoms are not entirely consistent with the objective clinical evidence. As the ALJ described, Plaintiff asserted extensive mental health complaints to Dr. Murphy and to the ALJ at the hearing, including three suicide attempts, daily anxiety, and panic attacks approximately ten times per week. *See* AR at 28, 49, 397. Despite these and other complaints of depression and anxiety, the ALJ found it noteworthy that Plaintiff has neither sought treatment nor "voiced concerns about this to any medical providers." AR at 28. Plaintiff points out one medical record that indicates she became tearful when discussing her gastric complaints (*Doc. 16* at 10), but the treating physician made no mention of concerns about Plaintiff's mental health. *See* AR at 309. "Given [Plaintiff's] description regarding the severity of her alleged mental health conditions, it would seem she would at least have mentioned her mental health issues to any one of her treating providers while receiving treatment for unrelated medical issues. However, as noted, it appears she has not." AR at 28. The Court finds no error where the ALJ discounted Dr. Murphy's opinion only in part because it was based on self-reports, and where the ALJ sufficiently explained why Plaintiff's self-reports are not entirely consistent with the objective record evidence.

The ALJ did not mention the fourth factor explicitly – whether Dr. Murphy's opinion regarding Plaintiff's functional limitations is consistent with the record evidence. ALJ Lindsay did, however, note at Step Three of the sequential analysis that Plaintiff has moderate difficulties in the area of concentration, persistence or pace, because she has demonstrated "some problems with detailed or complex tasks. Despite this, [she] is able to sustain concentration and attention long enough to perform simple, routine tasks

in a timely and efficient manner." AR at 24. The ALJ noted Plaintiff's ability to make jewelry, read, watch television, drive, use a telephone, create reminders for herself, and understand verbal and written instructions. AR at 24 (citing AR at 231, 235, 236). Plaintiff "testified that she can concentrate on a television show up to 30 minutes, before she loses focus, gets fidgety and has to move about." AR at 24, 59. Plaintiff also "testified she has problems remembering things she needs to do, such as making phone calls, keeping appointments, or paying bills." AR at 24, 60. Later in her opinion, ALJ Lindsay mentioned that Plaintiff's difficulty sleeping "complicates her ability to concentrate . . . ." AR at 26.

Plaintiff emphasizes her "ongoing battle with chronic gastritis and a duodenal ulcer" as an explanation for Dr. Murphy's opined limitations in her abilities to concentrate and persist. *Doc. 16* at 9. As the ALJ found, though, while Plaintiff has been treated for an ulcer and regularly takes medication for stomach issues (AR at 26), the record evidence shows that Plaintiff has received "standard treatment" for her gastrointestinal issues, and at least one condition was resolved. AR at 22 (citing AR at 302, 309-19). More importantly, the ALJ noted that in October 2013, after this treatment, Plaintiff "denied any gastrointestinal problems, including nausea, pain, or vomiting[,]" to her treating physician. AR at 22 (citing AR at 339 (noting that Plaintiff "states she had a duodenal ulcer, and was treated for H. pylori. She is now able to eat without pain, and has gained 15 lbs. . . . [N]o vomiting, no nausea, no constipation and no diarrhea")). And while there is a January 2015 record from a physical therapy appointment showing that Plaintiff "report[ed] her ulcer [was] really aggravated [that day] and she [was] throwing up throughout the day[,]" (AR at 419) there are no more medical records to

demonstrate that Plaintiff specifically complained to her treating providers about gastrointestinal issues. *See, e.g.*, AR at 342-46 (Nov. 2013 visit for knee pain and osteoarthritis, Plaintiff denied nausea; no other notes regarding gastrointestinal issues), 377-81 (Dec. 2013 visit for contusion on left arm, neck strain, and hypertension, Plaintiff denied vomiting or nausea; no other notes regarding gastrointestinal issues), 382-85 (Jan. 2014 visit for an upper respiratory infection, Plaintiff denied diarrhea; no other notes regarding gastrointestinal issues), 411-15 (May 2014 visit for sinusitis; no other notes regarding gastrointestinal issues), 401-05 (July 2014 visit for hypertension and finger pain; no notes regarding gastrointestinal issues), 406-10 (Nov. 2014 visit for arthritis and right knee strain; no notes regarding gastrointestinal issues), 464-67 (Feb. 2016 visit for right knee straight and osteoarthritis; no notes regarding gastrointestinal issues), 459-63 (Mar. 2016 visit for arthritis and metatarsalgia of right foot, Plaintiff denied nausea, vomiting, and diarrhea; no other notes regarding gastrointestinal issues).

The ALJ also noted that the opinions of the state agency medical consultants, such as Dr. Chiang, are more consistent with Dr. Murphy's evaluation. AR at 29. Relying on *Sanchez v. Berryhill*, Civ. No. 16-923 SCY, 2018 WL 801530 (D.N.M. Feb. 9, 2018), Plaintiff contends that the ALJ inadequately explained why she gave more weight to a non-examining medical consultant than she did to Dr. Murphy, who personally evaluated Plaintiff. *See Doc. 16* at 11. In *Sanchez*, a consultative psychologist found marked limitations in the plaintiff's "social functioning and general adaptation." *Sanchez*, 2018 WL 801530, at *3. The ALJ in that case gave the psychologist's opinions "limited weight" because they were "based entirely on the claimant's self-report and [were] not

supported by the overall record." *Id.* at 2 (citation omitted). The court disagreed, noting that the psychologist had "reviewed [the p]laintiff's medical records from [a treating physician] and performed cognition tests . . . ." *Id.* at 3. Moreover, the court found that the ALJ failed "to adequately explain which portions of the record justif[ied]" his finding that the opinion was not supported. *Id.* at *4. In fact, the court found, the treating physician's opinion was actually consistent with the psychologist's opinion, in contradiction to the ALJ's finding. *Id.* Accordingly, the court determined that "the ALJ's conclusory reasoning for according [the consultative psychologist's] opinions limited weight [did] not allow [the court] to meaningfully review the bases for his decision." *Id.*

*Sanchez* is distinguishable for several reasons. Primarily, the Court *can* meaningfully review the ALJ's decision based on her reasoning as a whole, as explained above. Second, there is no treating physician opinion here, like there was in *Sanchez*, which provides support for Dr. Murphy's opinion. Plaintiff argues that several factors support Dr. Murphy's finding – for example, Plaintiff's ongoing gastrointestinal issues, the one treatment record that mentions Plaintiff becoming tearful when discussing her gastric pain, the fact that Plaintiff has had to miss physical therapy due to her gastric symptoms, and her inability to take opiates for her other pain-producing impairments due to her gastrointestinal issues. *Doc. 16* at 9-10. While the Court recognizes these symptoms and consequences of Plaintiff's gastrointestinal condition, they fall short of the evidence in *Sanchez* – that of an actual opinion from a treating

physician. Lastly, unlike the psychologist in *Sanchez*, Dr. Murphy did not have the

benefit of reviewing Plaintiff's medical records when he completed his evaluation.[2]

Ultimately, the Court finds that ALJ Lindsay's analysis of Dr. Murphy's opinion

was brief, but sufficient. Substantial evidence supports the ALJ's finding regarding the

moderate limitations in Plaintiff's ability to concentrate and persist. And while Plaintiff

contends that there is also evidence in the record that would support a finding that

Plaintiff has marked limitations in her ability to concentrate and persist (*Doc. 16* at 9),

the Court finds that "a reasonable mind might accept" the relevant evidence to support

the ALJ's determination. *See Lax*, 489 F.3d at 1084 (quotations omitted)). Even if

Plaintiff's argument is to be accepted and the record evidence could be construed to

also have supported contrary findings, the Court "may not 'displace the agenc[y's]

choice between two fairly conflicting views . . . .'" *Id.* (quotation omitted). Accordingly,

the Court will deny Plaintiff's motion with respect to this issue.

### 3. The ALJ adequately analyzed Dr. Chiang's opinion.

In her third point of error, Plaintiff contends that the ALJ failed "to meaningfully

explain why she afforded great weight to" the non-examining state agency consultant's

opinion. *Doc. 16* at 11. The ALJ did not give Dr. Chiang's opinion "great weight"; rather,

the ALJ noted that Dr. Chiang's "opinions are more consistent with [Dr. Murphy's]

psychological evaluation" and are, thus, entitled to "more weight" than the functional

---

[2] Plaintiff asserts that the ALJ should have contacted Dr. Murphy for a further explanation of his findings. *Doc. 16* at 12. As the Commissioner notes, the regulations provide that the ALJ *may* recontact a medical source where "the evidence is consistent but [there is] insufficient evidence to determine whether [Plaintiff is] disabled . . . ." 20 C.F.R. § 416.920b(b)(2) & (b)(2)(i). ALJ Lindsay was not required to recontact Dr. Murphy, because the evidence was sufficient to make a disability determination.

limitations Dr. Murphy opined. AR at 29. Again, although ALJ Lindsay's analysis leaves much to be desired, the Court can follow her reasoning. *See* 20 C.F.R. § 416.927(f)(2).

Dr. Chiang reviewed the record and completed a Psychiatric Review Technique on May 26, 2014. *See* AR at 84-87. She noted that Plaintiff is "able to cook, go out alone, drive, [and] count change. She makes jewelry and reads daily. She is not social but gets along with others. She reports she is depressed. She can follow instructions." AR at 84. Dr. Chiang observed that Plaintiff's treatment records address physical, not mental conditions, aside from one note in 2013 "in which [Plaintiff] reports frustration." AR at 84. Considering Dr. Murphy's mental status evaluation, Dr. Chiang noted that Plaintiff was in a depressed mood with an anxious affect, but her speech and behavior were within normal limits and her memory was intact. AR at 84. "She could do serial 3s, not serial 7s. She could do basic math calculations. Cognition [was] intact." AR at 84. She "lightly weighted" Dr. Murphy's opinion that Plaintiff had marked limitations in her abilities to concentrate and persist at tasks, because "it is not supported by the mental status exam[,]" nor is there any "diagnosis or treatment of depression . . . ." AR at 84. Dr. Chiang found it important that Plaintiff "retains the functional capacity to drive, count change, read daily, and cook." AR at 84.

As mentioned above, ALJ Lindsay found that Dr. Chiang's opinions are more consistent with Dr. Murphy's mental status evaluation. AR at 29. And while Plaintiff contends that the ALJ did not mention the reasons Dr. Chiang disagreed with Dr. Murphy (*see Doc. 16* at 11), the ALJ listed the same or similar evidence earlier in her opinion when she discussed Dr. Murphy's evaluation (*see* AR at 27). The Court recognizes that "a consulting, examining physician's testimony is normally supposed to

15

be given more weight than a consulting, non-examining physician's opinion." *Thomas*, 147 F. App'x at 760 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (internal citation omitted)). The Court finds, though, that ALJ Lindsay provided a sufficient explanation for her determination that the state agency medical consultant's opinion "outweigh[s] the medical opinion of an acceptable medical source . . . ." 20 C.F.R. § 416.927(f)(1). The ALJ adequately explained the weight given to both Dr. Murphy's and Dr. Chiang's opinions such that the Court may follow her reasoning. *See id.* § 416.927(f)(2).

## B.    The ALJ's Step Two findings stand.

Plaintiff next argues the ALJ erred in finding that Plaintiff's gastric impairments are non-severe. *Doc. 16* at 10-11. "At step two, an ALJ must consider whether an impairment is severe." *Lopez v. Berryhill*, No. CV 16-552 SCY, 2017 WL 4356384, at *3 (D.N.M. Sept. 30, 2017) (citing *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) (citing 20 C.F.R. § 416.920(a)(4)(ii))). "An impairment is 'severe' if it 'significantly limits [a claimant's] physical or mental ability to do basic work activities.'" *Id.* (quoting 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 416.920(c).

At Step Two, ALJ Lindsay found:

> The objective evidence reveals diagnoses of duodenal ulcer and status post treatment for Helicobacter pylori bacterial infection. According to gastroenterology notes covering the period from February 15, 2013 through March 11, 2013, [Plaintiff] was evaluated for chronic persistent epigastric pain and associated nausea and vomiting, over the course [of] 3 1/2 years. She was diagnosed with a duodenal ulcer and tested positive for H. pylori. She received standard treatment and her condition resolved. During an office visit with Peter Wong, M.D., [Plaintiff] denied any gastrointestinal problems, including nausea, pain, or vomiting. There is no evidence to support a finding that these conditions, whether considered singly or in combination significantly impair [Plaintiff's] ability to engage in

work activity; therefore, I find these conditions are non-severe for the purposes of the Social Security Act.

AR at 22-23 (citing AR at 339, 305-19).

Plaintiff makes several points in support of her argument. First, Plaintiff takes issue with the ALJ's findings that the gastric issues resolved in 2013, as Plaintiff complained of gastric symptoms at a 2015 physical therapy appointment. *Doc. 16* at 10 (citing AR at 419). As the Court explained above, the record is devoid of any evidence that Plaintiff sought treatment for gastric issues after she reported to Dr. Wong that her issues had improved in October 2013. *See* AR at 339, 342-46, 377-81, 382-85, 401-05, 406-10, 411-15, 459-63, 464-67.

Plaintiff argues that "the medical evidence demonstrates a clear pattern of gastric issues that are severe in and of themselves." *Doc. 16* at 10 (citing AR at 301-02, 305, 309, 312, 337-41, 396, 419). For example, Plaintiff points out that "her gastric issues significantly limit her ability to treat symptoms caused by other severe impairments[,]" and her gastric issues "aggravate[ ] her mental health problems . . . ." *Id.* at 10 (citing AR at 327-31). "[W]hile the showing a claimant must make at step two is de minimis, a showing of the mere presence of a condition is not sufficient." *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) (citing *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003)). Here, "the ALJ concluded that [Plaintiff] did not meet [her] burden, setting forth the evidence from the record relevant to" her gastrointestinal issues and correctly noting that Plaintiff had ceased to complain about the issues to her treating physicians. *See id.*

Finally, Plaintiff contends that the ALJ failed to incorporate any limitations into the RFC attributable to her gastrointestinal issues. *Id.* at 11. The Court disagrees and finds that the ALJ incorporated limitations that directly address Plaintiff's concerns above. The ALJ acknowledged that Plaintiff is unable to take prescription painkillers but explicitly found that Plaintiff's "allegations of chronic pain should be accommodated by the [RFC] . . . ." AR at 26, 28. She also specifically "limited [Plaintiff] to simple work with social limitations, as well as minimal work place changes, based upon Dr. Murphy's" diagnosis of depression. AR at 28. The Court finds that the ALJ adequately addressed and considered Plaintiff's gastrointestinal impairments in assessing the RFC. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*") (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). Accordingly, the Court will deny Plaintiff's motion on this issue.

### C.    The ALJ's analysis under SSR 16-3p was adequate.

Plaintiff next argues that the ALJ failed to comply with the two-step analysis to evaluate Plaintiff's symptoms. *Doc. 16* at 13. Social Security Ruling 16-3p defines this process. *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). At step one, the ALJ determines whether the claimant "has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *3. At step two, the ALJ "evaluate[s] the intensity and persistence of [the claimant's] symptoms such as pain and determine[s] the extent to which [the] symptoms limit his or her ability to perform work-related activities . . . ." *Id.* at *4. As part of the step two evaluation, the ALJ considers the record evidence, the claimant's statements, medical

and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R.

§ 416.929(c)(3), which include:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8.

Plaintiff asserts that ALJ Lindsay failed to sufficiently analyze her gastrointestinal symptoms at the second step. *Doc. 16* at 13. "In fact," Plaintiff argues, the ALJ "completely ignored" her symptoms. *Id.* The Commissioner responds that, rather than ignoring Plaintiff's symptoms, "the ALJ described her ulcer and referred to her treatment of H. pylori, including the fact that she took medication for stomach issues." *Doc. 18* at 20 (citing AR at 22, 26).

In her analysis pursuant to SSR 16-3p, ALJ Lindsay mentioned Plaintiff's ulcer and referred to her earlier description of Plaintiff's gastrointestinal impairments. *See* AR at 26; *see also* AR at 22. Contrary to Plaintiff's assertions that the ALJ "nowhere discusses how the gastric issues limit Plaintiff's options for pain treatment" (*Doc. 19* at 6), ALJ Lindsay did note that Plaintiff does not take prescription pain medication "due to bothersome side effects" (AR at 26). The ALJ also stated that Plaintiff regularly takes medications for stomach issues. AR at 26.

While Plaintiff does not specifically assert that the ALJ failed to adequately analyze the SSR 16-3p factors, the Court will examine the factors ALJ Lindsay discussed.

● ***The location, duration, frequency, and intensity of pain or other symptoms***

ALJ Lindsay reviewed Plaintiff's allegations of pain, which largely centered on her right knee and ankle injuries, sciatic nerve pain, and headaches. AR at 26.

● ***Factors that precipitate and aggravate the symptoms***

ALJ Lindsay noted that Plaintiff's medical conditions negatively affect her sleep, "which further complicates her ability to concentrate and perform exertional activities." AR at 26.

● ***Medications and treatment***

The ALJ described Plaintiff's medication regimen, which includes "antihypertensive medication, mediation for her stomach issues, and aspirin for pain, which she said she only takes about twice per week." AR at 26. She also mentioned that Plaintiff "has been on prescription pain medications in the past; however, due to bothersome side effects, she is unable to take prescription pain killers." AR at 26. The ALJ also listed the treatment Plaintiff has obtained for her conditions, including surgery, physical therapy, and cortisone injections. AR at 26.

● ***Measures Plaintiff uses to relieve pain and symptoms***

The ALJ stated that Plaintiff "lies down about four to five hours [each day] due to pain and fatigue." AR at 26.

Plaintiff correctly notes that the ALJ does not mention in this section some of the symptoms Plaintiff described at the hearing. *See* AR at 50-51. Also notably absent from

the ALJ's step-two analysis is a lengthy discussion regarding any recent treatment of Plaintiff's gastrointestinal problems; but, as the Court has already found, Plaintiff submitted no recent treatment records. The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR at 26. The ALJ explained earlier in her decision that Plaintiff "received standard treatment" for her duodenal ulcer and H. pylori infection "and her condition resolved." AR at 22. Moreover, she "denied any gastrointestinal problems, including nausea, pain, or vomiting[,]" during an October 28, 2013 visit with Dr. Wong. AR at 22 (citing AR at 339). The ALJ referenced this earlier finding concerning Plaintiff's recent denial of symptoms in her analysis under SSR 16-3p. *See* AR at 26. The Court finds that the ALJ adequately explained her findings regarding Plaintiff's symptoms pursuant to SSR 16-3p.

Finally, Plaintiff asserts that the ALJ failed to incorporate "minimal work place changes" into the RFC, as the ALJ stated in her decision. *See Doc. 16* at 14; AR at 28. At the conclusion of the ALJ's decision, she noted that she "limited [Plaintiff] to simple work with social limitations, as well as minimal work place changes, based upon Dr. Murphy's assessment." AR at 28. The RFC, however, states that Plaintiff "requires work involving no more than occasional change in the routine work setting." AR at 25. The Court also notes that the ALJ mentioned occasional, and not minimal, changes in her hypothetical to the VE. *See* AR at 64 ("This person would require work involving no more that [sic] occasional change in the routine work setting."). Plaintiff does not argue that the record supports limitations beyond occasional changes in the routine work

setting, nor does Plaintiff point to any findings in Dr. Murphy's opinion that support minimal changes in the work setting. *See Doc. 16* at 14. Accordingly, the Court finds no reversible error in this apparent misstatement on ALJ Lindsay's part.

## V.    Conclusion

The Court finds that the ALJ adequately analyzed the opinions of Drs. Murphy and Chiang, incorporated sufficient limits into Plaintiff's RFC, and evaluated Plaintiff's symptoms appropriately under SSR 16-3p.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand (*Doc. 16*) is **DENIED**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent